UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY, WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MERRILL LYNCH & CO., INC., a Delaware corporation; MERRILL LYNCH MONEY MARKETS, INC., a Delaware corporation; MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., a Delaware corporation; and DOES 1-100,<br><br>Defendants. | CASE NO. C10-1156 RSM<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

## I.  INTRODUCTION

This matter comes before the Court on Motion to Dismiss brought by Defendants Merrill Lynch, Merrill Lynch Money Markets, and Merrill Lynch, Pierce, Fenner and Smith ("Defendants"). Dkt. #22. King County ("Plaintiff") brings claims under the Washington State Securities Act ("WSSA") alleging that Defendants have violated RCW 21.20.010 and RCW 21.20.430 of the WSSA. Plaintiff also brings a claim for breach of contract. Dkt. #1. Plaintiff contends that Defendants failed to inform it of significant risks and problems underlying securities purchased by Plaintiff, and that Defendants had a statutory and contractual duty to do so.

## II. BACKGROUND

Plaintiff, through the King County Investment Pool and the County Investment Officer, invests cash reserves for County agencies and public entities. On three dates during the summer of 2007, Plaintiff purchased commercial paper for the Investment Pool. Twice Plaintiff purchased commercial paper offered by Mainsail, and once Plaintiff purchased commercial paper offered by Victoria. Plaintiff alleges that Defendants acted as a dealer or seller of the commercial paper offered by Mainsail and Victoria. Plaintiff alleges that it had a long-standing agreement with Defendants, whereby as an institutional investor, Defendants would implement reasonable procedures in order to avoid imprudent investments and apprise Plaintiff of all foreseeable risks. Plaintiff also alleges that Defendants failed to disclose certain non-public information of which Defendants were aware. This information pertained to what Plaintiff alleges were significant and foreseeable risks surrounding the commercial paper purchased by Plaintiff. Plaintiff further alleges that Defendants knew the credit ratings associated with the commercial paper were unreliable and were engaged in activities to purge themselves of the same securities that Defendants had represented as prudent to Plaintiff.

Defendants contend that Plaintiff is a sophisticated investor who independently elected to purchase the commercial paper in question, and therefore Defendants breached no duty owed to Plaintiff. Defendants also argue that they cannot be construed as a "seller" under the WSSA. Defendants further contend that Plaintiff fails to identify any misstatements or omissions made by Defendants, and therefore Plaintiff's claims under the WSSA must fail as a matter of law. Finally, Defendants contend that Plaintiff's breach of contract claim fails because the alleged agreement between the parties was superseded by later agreements.

Plaintiff brings claims against all Defendants under RCW 21.20.010(2) for the three commercial paper purchases made in the summer of 2007. RCW 21.20.010(2) makes it "unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly: … To make any untrue statement of a material fact or to omit or state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]" Plaintiff also brings a claim arising from all Mainsail and Victoria purchases against all Defendants under RCW 21.20.010(3), which makes it unlawful "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." Plaintiff brings an additional claim against Defendants Merrill Lynch and Merrill Lynch, Pierce, Fenner and Smith under RCW 21.20.430(3), which alleges control liability against "[e]very person who directly or indirectly controls a seller or buyer…" who has violated other provisions of the WSSA. Finally, Plaintiff brings a claim for breach of contract against Defendants Merrill Lynch and Merrill Lynch, Pierce, Fenner and Smith.

### III. DISCUSSION

**A. Pleading Standard**

As an initial matter, the parties dispute whether Plaintiff's claims brought under RCW 21.10.010 of the WSSA constitute allegations of fraud, and therefore whether the allegations must meet the particularity requirements set forth under FRCP 9(b). The Ninth Circuit has held "that in a case where fraud is not an essential element of a claim, only … allegations of fraudulent conduct must satisfy the heightened pleading requirements of FRCP 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary…standards of FRCP 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). Therefore, in order to determine which

1 pleading requirements to apply, the Court must determine whether Plaintiff's claims brought
2 under the WSSA constitute allegations of fraudulent conduct.

3     Rule 10b-5 of the federal Securities and Exchange Commission requires the element of
4 scienter, and Plaintiffs who bring claims under Rule 10b-5 must satisfy the particularity
5 requirements as with any fraud claim. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976);
6 *Frank v. Dana Corp.*, 547 F.3d 564, 569 (6th Cir. 2008). The Supreme Court of Washington has
7 held that "Rule 10b-5 of the Securities and Exchange Commission is identical to RCW 21.10.010
8 except for references to interstate commerce, the mails and the facility of any national securities
9 exchange." *Kittilson v. Ford*, 608 P.2d 264, 265 (Wash. 1980). However, *Kittilson* does not
10 stand for the proposition that claims brought under the WSSA necessarily constitute allegations
11 of fraudulent conduct. Despite finding the language identical, the decision goes on to state:
12 "First, the 'manipulative or deceptive' language of section 10(b) of the 1934 act is not included
13 in the Washington act. Secondly, in contrast to the federal scheme, the language of Rule 10b-5 is
14 not derivative but is the statute in Washington. Finally, no legislative history similar or
15 analogous to Congressional legislative history exists in Washington." *Id*. Citing *Kittilson*, the
16 Ninth Circuit subsequently recognized that while "21.10.010 closely resembles its federal
17 counterpart, scienter is not required under RCW 21.10.010." *Burgess v. Premier Corp.*, 727 F.2d
18 826, 833 (9th Cir. 1984). As such, claims brought under RCW 21.10.010 do not require the
19 element of scienter, and therefore do not constitute allegations of fraud for purposes of pleading
20 standards under the Federal Rules of Civil Procedure. Therefore, the standard set forth under
21 FRCP 8(a) applies.

**B. Claims under the WSSA**

    1. <u>Seller and Control Person Liability under the WSSA</u>

Having determined which pleading standard to apply, the Court now turns to the issue of Defendants' alleged violation and liability under the WSSA. To establish liability under the WSSA, the purchaser of a security must prove that the seller and/or others made material misrepresentations or omissions about the security, and the purchaser relied on those misrepresentations or omissions. *Stewart v. Estate of Steiner*, 93 P.3d 919, 922 (Wash. App. 2004). Because the primary purpose of the WSSA is to protect investors, courts construe it liberally. *Id.*

The first issue is whether Defendants may be considered "sellers" under the WSSA. In determining liability as a seller under RCW 21.20.430(1), the Washington Supreme Court has held that civil liability not only attaches to the literal seller of a security, but may also attach to those who are a substantial factor in the sale of the securities. *Haberman v. Washington Public Power Supply System*, 744 P.2d 1032, 1051 (Wash. 1987). In making the determination as to whether a defendant's conduct is a substantial contributive factor in a securities sales transaction, Washington Courts examine several considerations including: (1) the number of other factors which contribute to the sale and the extent of the effect which they have in producing it; (2) whether the defendant's conduct has created a force or series of forces which are in continuous and active operation up to the time of the sale, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (3) lapse of time. *Id.* at 1052. Under RCW 21.20.430(3), participant (or control) liability is predicated on other defendants' relationships to a seller liable under RCW 21.20.430(1). *Id.* at 1052-1053. Therefore, the WSSA does not require privity between the defendant and the investors for the defendant to be

considered liable. *Id* at 1052. Rather, the defendant must simply exhibit attributes of a seller, or be a catalyst to the sale. *Id*.

At this early stage in the litigation, Plaintiff has pleaded sufficient facts such that Defendants may be construed as "sellers" under RCW 21.20.430(1). The Court will not engage in a detailed factual inquiry at the 12(b)(6) stage. Plaintiff's claims, if taken as true, reveal that Defendants were sufficiently engaged in transactions that involved the buying and selling of securities. Dkt. #1 at 28. Plaintiff's complaint sets forth sufficient facts, which if taken as true, reveal that it purchased commercial paper, offered for sale by Defendants, and that Defendants were a substantial factor in Plaintiff's purchase of the commercial paper in question. *Id*. Of the factors discussed *supra*, the first consideration is, "the number of other factors which contribute to the sale." In this case, Defendants and Plaintiff had a relationship whereby Plaintiff transacted with Defendants to purchase commercial paper offered by Defendants. Absent Plaintiff's transaction or involvement with Defendants, Plaintiff would not have come to purchase the particular commercial paper. The second factor, "whether defendant's conduct has created a force…which [is] in continuous and active operation up to the time of the sale, or has created a situation harmless unless acted upon by other forces…" In the case at hand, the sale cannot be said to be the result of another independent force. Finally, the third factor, "lapse of time," cannot be said to have diminished Defendants' causal role in the purchase.

In terms of control person or participant liability, the *Haberman* decision noted that while some secondarily liable parties under RCW 21.20.430(3) may also be liable as sellers under RCW 21.20.430(1), not all secondarily liable parties are sellers under the substantial contributive factor test. 744 P.2d at 1052. As such, the *Haberman* Court concluded that participants who are involved in a securities sale, but who are not necessarily substantial contributive factors, may be

1 subject to secondary liability under RCW 21.20.430(3). *Id.* Plaintiff has adequately pleaded
2 control person liability. Washington Courts have held associates of sellers to be control persons
3 who could be liable for a seller's actions under the WSSA even though the company in which the
4 associate participated was not the company through which the fraudulent notes were sold, and
5 even though there was no evidence that the associate actually controlled the seller's companies
6 or that he had authority over the sale of notes by the seller's other companies. *Herrington v.*
7 *David D. Hawthorne, CPA, P.S.*, 47 O.3d 567 (Wash.App. 2002). In the case at hand, Plaintiff
8 has brought claims against Defendant Merrill Lynch and two wholly-owned subsidiaries who
9 Plaintiff alleges "played an integral role in the transactions and breaches at issue." The
10 relationship between a corporation and its wholly owned subsidiaries creates a greater likelihood
11 of control and authority than does other forms of associations for which Washington Courts have
12 refused to dismiss claims brought on the theory of control person liability. As such, these
13 allegations are sufficient to state a claim against Defendants under the theory of control person or
14 participant liability.

   2. Misstatements and Omissions

16 The parties dispute whether Plaintiff has sufficiently alleged that Defendants have made
17 any omissions or misrepresentations that may serve as a basis for liability. *Haberman* also sheds
18 light on this issue in the context of litigation brought under the WSSA. The *Haberman* Court
19 quoted the Restatement (Second) of Torts in stating that:

> **[o]ne who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if he is under a duty to the other to exercise reasonable care to disclose the matter in question."**

23 744 P.2d at 1070.

In the present case, Plaintiff alleges that it had a long-standing written agreement in the form of the Dealer Certification with Defendant Merrill whereby Defendant certified that it had:

> **…implemented reasonable procedures and a system of controls designed to preclude imprudent investment activities arising out of transactions conducted between our firm and King County.**

Defendant also:

> **pledge[d] to exercise due diligence in informing [King County] of all foreseeable risks associated with financial transactions conducted with our firm.**

Dkt. #1, pgs. 3-4.

Plaintiff further alleges that Defendants were aware of the significant amount of toxic mortgage-backed assets contained in Mainsail and that Mainsail was at high risk for illiquidity and default and had been internally identified by Defendants as "liquidity challenged." Dkt. #1, p. 22. In addition, it is alleged that Defendants knew the credit ratings associated with the Mainsail commercial paper were unreliable and that Defendants were engaged in activities to purge themselves of the same securities that Defendants had represented as prudent to Plaintiff. Dkt. #1, pgs. 34-35. Plaintiff makes similar allegations with respect to the Victoria commercial paper. Dkt. #1, p. 41. Given this long-standing agreement and the alleged non-public knowledge possessed by Defendants, Plaintiff has pleaded enough facts to survive a motion to dismiss, and has at least raised the prospect that Defendants' silence in the face of the express agreement between the parties constituted a breach of a duty owed to Plaintiff.

3. <u>Reasonable Reliance</u>

While Defendants argue that Plaintiff is a sophisticated investor responsible for its own investment decisions, it cannot be said as a matter of law that Plaintiff's reliance was unreasonable. At this early stage, Plaintiff has pled that Defendants possessed specialized knowledge pertaining to the particular commercial paper at issue in this litigation. Plaintiff

alleges that it was unaware of the growing risks associated with securities Mainsail and Victoria commercial paper. Plaintiff further alleges that Defendants possessed non-public information regarding their own attempts to purge themselves of Mainsail and Victoria commercial paper, and that Defendants possessed non-public information about the underlying assets, ratings, and risk of default. Dkt. #1, p. 32. Plaintiff further alleges that pursuant to its long-standing agreement with Defendants and its duty under the WSSA, it was entitled to rely on Defendants' duty to disclose.

Washington Courts have relied on several factors in assessing the reasonable reliance under the WSSA. These include (1) the sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations. *Stewart* 93 P.3d at 927. As is evident from the numerous factors considered by Washington Courts, reasonable reliance is a highly factual inquiry. Without engaging in an in-depth factual analysis that would be inappropriate at the dismissal stage, a reading of the allegations discussed above reveal enough of a factual basis for this Court to conclude that Plaintiff has pled sufficient facts to make a showing of reasonable reliance.

**C. Breach of Contract Claim**

Plaintiff alleges that the Dealer Certification executed between itself and Defendant constitutes a contract, whereby in exchange for Plaintiff's business, Defendants agreed to implement a system of controls meant to preclude imprudent investments by requiring Defendants to exercise due diligence and warn Plaintiff of all foreseeable risks, as noted in the language quoted *supra*. Plaintiff has stated a claim for breach of contract.

**D. Defendants' Request to Consider Attached Documents**

Defendants have presented documents outside the pleadings. It is generally improper to render judgment on the pleadings that would include consideration of evidence outside the pleadings. AMJUR PLEADING § 552 (West 2010). Pursuant to FRCP 12(d), a court may consider matters outside the pleadings by converting the motion to dismiss to a motion for summary judgment, giving all parties an opportunity to engage in additional discovery. Neither party here has moved for conversion under 12(d). However, written instruments referred to extensively in a plaintiff's complaint or attached to pleadings may be considered part of the pleading. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). These documents may be offered by a defendant and treated as part of the complaint under the doctrine of incorporation by reference. *Id*. If the documents are deemed to have been incorporated by reference, then a court may treat the documents as part of the pleading without converting a defendant's motion to dismiss into a motion for summary judgment. *Van Buskirk v. CNN*, 288 F.3d 977, 980 (9th Cir. 2002). In this case, the documents in question were not attached to the complaint, nor were they extensively referenced in the complaint. Therefore, Defendants' request to consider the additional documents is denied.

## IV.  CONCLUSION

Having reviewed the relevant pleadings, declarations, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion to Dismiss (Dkt #22) is DENIED.

(2) Defendants' Request to Consider Additional Documents (Dkt #23) is DENIED.

//
//
//
//

Dated this 18th day of February 2011.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE