THE HONORABLE RICARDO S. MARTINEZ

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KING COUNTY, WASHINGTON<br><br>Plaintiff,<br><br>vs.<br><br>MERRILL LYNCH & CO., INC., et al.<br><br>Defendants. | CIVIL ACTION NO. 2:10-CV-01156 RSM<br><br>**DEFENDANTS MERRILL LYNCH & CO., INC., MERRILL LYNCH MONEY MARKETS, INC. AND MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC.'S MOTION TO STRIKE ALLEGATIONS FROM FIRST AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: MARCH 16, 2012**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 2:10-CV-01156 RSM
A/74743071.11

**BINGHAM McCUTCHEN LLP**
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA 92626
PHONE: 714.830.0600
FAX: 714.830.0700

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................................................- 1 -

II. STATEMENT OF FACTS ............................................................................................- 3 -

III. ARGUMENT..................................................................................................................- 6 -

    A. Legal Standard ...................................................................................................- 6 -

    B. The Market Conduct Allegations are Irrelevant to Plaintiff's Claims and Should be Stricken as Immaterial ........................................................................- 6 -

    C. The Quid Pro Quo Allegations Should be Stricken as Immaterial Because They Were Borrowed From Another Lawsuit and are Implausible as Pled ......- 9 -

    D. The Litigation Allegations Are Neither Responsive Nor Relevant to Plaintiff's Claims and Should be Stricken as Impertinent ...............................- 11 -

    E. The Purported Recommendation Allegations are Contradicted By Plaintiff's Prior Pleadings and The Offering Documents Sent To Plaintiff Prior To Its Purchases .......................................................................................- 12 -

IV. CONCLUSION.............................................................................................................- 12 -

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM    i

**BINGHAM McCUTCHEN LLP**
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................3, 4, 10, 11

*Braden v. Wal-Mart Stores, Inc.*
    588 F.3d 585 (8th Cir. 2009) ................................................................................................10

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1561, 118 L.Ed.2d
    208 (1992) ...............................................................................................................................5

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994) .........................6

*Gross v. Diversified Mortg. Investors*,
    431 F.Supp. 1080 (S.D.N.Y. 1977) ........................................................................................2

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991) ...................................................................................................5

*In re Merrill Lynch & Co., Inc. Research Reports Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) .............................................................................................8

*In Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ...................................................................................................8

*Reddy v. Litton Indus., Inc.*
    912 F.2d 291 (9th Cir. 1990) ................................................................................................12

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................................................8, 10

*S. California Hous. Rights v. Nijjar*,
    CV 02-9712 DSF, 2004 WL 5639772 (C.D. Cal. May 26, 2004) ..........................................6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*
    806 F.2d 1393 (9th Cir. 1986) ..............................................................................................12

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM            ii

A/73579050.1

**BINGHAM McCUTCHEN LLP**
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972)..................................................................................................2

*Sliger v. Prospect Mortgage*,
    789 F. Supp. 2d 1212 (E.D. Cal. 2011)................................................................................6, 8

*Sprewell v. Golden State Warriors*,
    266 F.3d 979, 988 (9th Cir. 2001) ........................................................................................10

*State of California v. United States of America*,
    512 F. Supp. 36 (N.D. Cal. 1981) ...........................................................................................6

*Wilkerson v. Butler,*
    229 F.R.D. 166 (E.D. Cal. 2005) .......................................................................................6, 11

**OTHER AUTHORITIES**

F.R.C.P. 8.........................................................................................................................................1

F.R.C.P. 8(a) ............................................................................................................................10, 11

F.R.C.P. 8(d)(1) ..............................................................................................................................11

F.R.C.P. 12(f).......................................................................................................................... passim

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM         iii

**BINGHAM McCUTCHEN LLP**
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

A/74743071.11

1  The Merrill Lynch Defendants ("Merrill Lynch") hereby move this Court pursuant to
2  F.R.C.P. Rule 12(f) for an order striking the following paragraphs from Plaintiff's First
3  Amended Complaint ("FAC"):  2, 6, 7, 34, 43 (lines 22-23), 81, 92 (lines 13-14), 98 (line 16),
4  109-110, 118-128, 131, 135 (lines 3-4), 138, 147 (lines 3-7), 157 (lines 19-20), 158, 176, 178,
5  187(a), 188(i), 188(n), 188(o), 196(a), 197(i), 197(n), 197(o), 206(l) and Footnote Nos. 2, 5, 12,
6  37, 42, 44-51, 55, and 64.

## I. INTRODUCTION

Plaintiff's FAC, as presently constituted, is an impermissible mélange of irrelevant, reckless and inflammatory allegations that not only threatens to turn the pleading requirements of F.R.C.P. Rule 8 on its head but, absent Court intervention, would transform a relatively straight-forward claim regarding Plaintiff's purchase of two securities into a trial over the national credit crisis of 2007.  Under Rule 8, Plaintiff is required to submit a short and plain statement of the case with "simple, concise and direct" factual allegations showing that it is entitled to relief. Because the factual circumstances of Plaintiff's purchases of the two securities at issue do not stand on their own to support a claim, Plaintiff has amended its complaint with a sprawling narrative that draws from unsupported assertions made in other complaints (including complaints dismissed at the pleading stage) to string together a series of unwarranted and speculative inferences regarding Merrill Lynch's purported role in the securities markets and alleged prescient knowledge of the worldwide collapse of the capital and credit markets.

Despite the prolix nature of the FAC, this action is, and always has been, about Plaintiff's purchases of commercial paper issued by Mainsail II and Victoria Finance.  Plaintiff made the purchases of those securities on July 27, July 31, and August 2, 2007 through its account with Merrill Lynch.  In its original complaint, Plaintiff alleged that it selected and purchased those securities based on its own research, and that Merrill Lynch did not solicit or recommend those purchases.  The FAC now takes more than one hundred pages to assert that Plaintiff purportedly

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM          - 1 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

1  purchased these securities based on a "recommendation" from Merrill Lynch without being
2  aware that they included subprime mortgage-backed assets.  These new allegations not only
3  contradict Plaintiff's prior judicial admissions regarding the circumstances of its purchases, they
4  are also contradicted by the offering documents referenced in the complaint.  Those offering
5  documents, sent to Plaintiff prior to its purchases, contained detailed explanations of all the risks
6  of which Plaintiff now claims to have been unaware of and specifically disclose that 90% of the
7  assets of Mainsail could consist of subprime securities.

8        The FAC's newly-asserted ignorance is also contradicted by the irrefutable fact that
9  Plaintiff purchased Mainsail from other dealers on at least eight prior occasions over a period of
10 more than one year before its County Investment Officer ("CIO") first purchased Mainsail from
11 Merrill Lynch.  Moreover, on the day before Plaintiff's purchase of Mainsail from Merrill Lynch
12 at issue, Merrill Lynch advised Plaintiff that the market was becoming much more volatile and
13 recommended that Plaintiff consider joining the "flight to quality" by purchasing bonds issued
14 by the Federal Home Loan Banks, which are government sponsored entities.

15       In the FAC, Plaintiff submitted a lengthy narrative disclosing none of these essential and
16 undeniable facts.  Rather, the FAC is a series of speculative and unwarranted inferences drawn
17 largely from unsupported allegations in other complaints filed in the wake of the financial crisis.
18 Plaintiff now seeks to use these new allegations to support its demands for expansive discovery
19 in its quest to find some evidentiary support for its claims.  "A complaint alleging fraud should
20 be filed only after a wrong is reasonably believed to have occurred; it should serve to seek
21 redress for a wrong, not to find one."  *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972).
22 Particularly in cases asserting claims for fraud, courts seek to "inhibit the filing of a complaint as
23 a pretext for discovery of unknown wrongs."  *Gross v. Diversified Mortg. Investors*, 431 F.Supp.
24 1080, 1087 (S.D.N.Y. 1977).

25       Plaintiff's FAC includes four categories of allegations that should be stricken pursuant to

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM         - 2 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

Rule 12(f). The first category of allegations, concerning Merrill Lynch's purported role in the securities markets and its purported knowledge of the future collapse of the securities markets are largely borrowed from other complaints, are irrelevant to Plaintiff's purchases of Mainsail and Victoria or the actual legal claims Plaintiff is attempting to assert, and would dramatically expand the scope of both discovery and trial in this matter.

The second category of allegations, regarding a purported quid pro quo agreement between Merrill Lynch and Mainsail, parrot the allegations made against other financial institutions in other actions regarding its involvement with Mainsail, and Plaintiff has attempted to back into the same claims through a series of implausible and unwarranted inferences that should be disregarded and stricken from the FAC. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The third category of allegations, Plaintiff's own commentary about positions taken in this litigation, are impertinent and should not be included in a complaint. The last category of allegations, regarding a purported recommendation, are immaterial because they are contradicted by Plaintiff's earlier pleading and by the offering documents.

For all of the reasons set forth herein, Merrill Lynch respectfully requests an order from the Court striking the prayed for paragraphs from the FAC so that this litigation, if it is to go forward at all, can go forward in a manner designed to resolve the specific disputes at issue.

## II.   STATEMENT OF FACTS

Plaintiff is an institutional investor that manages the King County Investment Pool with assets of $4 billion. Before entering into the purchases at issue here, Plaintiff bought, on dozens of occasions, hundreds of millions of dollars of commercial paper as part of its cash management strategies. The specific securities at issue here, commercial paper issued by "Mainsail II" and "Victoria Finance", were purchased by Plaintiff in the summer of 2007. In the summer of 2007, the Investment Pool owned approximately $1 billion in commercial paper investments, all managed and selected by the CIO. (FAC ¶ 172). On July 27, 2007, the CIO searched for

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 2:10-CV-01156 RSM           - 3 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA 92626
PHONE: 714.830.0600
FAX: 714.830.0700

additional commercial paper to purchase for the Investment Pool.  (FAC ¶ 176).  Following his customary practice, the CIO viewed the inventories of commercial paper offered for sale by the approved dealers through his own Bloomberg terminal and researched the credit ratings and other factors.  *Id*.  After reviewing the investment options available to him that day, the CIO chose to purchase commercial paper offered by an entity known as Mainsail, phoning in the order to Merrill Lynch to purchase the Mainsail commercial paper in the face amount of $25 million.  (FAC ¶¶ 176-177).  Four days later, Plaintiff followed the same practice and purchased additional Mainsail commercial paper in the face amount of $28.488 million.  (FAC ¶ 178).

Plaintiff initiated this action by acknowledging in its complaint that Merrill Lynch did not solicit or recommend the July 27 and July 31 purchases of Mainsail (Compl. ¶¶ 78-87, 93).  Plaintiff now alleges, for the first time in its FAC, that Merrill Lynch's financial advisor "recommended" the purchase by emailing the CIO two weeks prior to the purchases and identifying Mainsail as one of the "CP offerings you might like."  (FAC ¶¶ 10 n.5, 138).  The FAC <u>fails</u> to inform the Court that Plaintiff had purchased more than $200 million of Mainsail commercial paper on eight prior occasions in 2006 and 2007 from securities dealers other than Merrill Lynch and *before* Merrill Lynch was even a dealer for Mainsail.  The FAC similarly <u>fails</u> to allege that on the day before Plaintiff's initial Mainsail purchase from Merrill Lynch, the same individual now alleged to have recommended Mainsail in fact sent an email to Plaintiff's CIO advising that the market was becoming more volatile and that Plaintiff should consider a "Flight to Quality" by purchasing bonds issued by the Federal Home Loan Banks.  The fact is that Plaintiff rejected that recommendation and instead chose to purchase Mainsail in an effort to obtain a higher yield than <u>was available via the government-sponsored entity bonds Merrill Lynch had suggested</u>.

Plaintiff also falsely alleges in its FAC that it was unaware that Mainsail contained subprime assets.  In fact, Merrill Lynch sent Plaintiff the Private Placement Memorandum

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM          - 4 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

("PPM") for Mainsail on July 18, 2007, nine days before Plaintiff purchased Mainsail on July 27, 2007.[1]  The PPM contained detailed explanations of "RISK FACTORS" disclosing all of the risks that Plaintiff now falsely claims of which it was unaware, and **specifically disclosed that 90% of Mainsail's assets consisted of subprime mortgage assets**.[2]  The PPM also warned of current unfavorable market conditions, stating **"[a]ccording to recently published reports, the residential mortgage market in the United States has experienced a variety of difficulties and changed economic conditions that may adversely affect the performance and market value of U.S. Residential ABS Securities.**  Delinquencies, defaults and losses with respect to residential mortgage loans generally reportedly have increased in recent months, and may continue to increase, particularly in the subprime sector. . . ."  (RJN, Ex. A at pp. 25-26).

Shortly after Plaintiff's purchases of Mainsail and Victoria, the credit and capital markets experienced a sudden, unprecedented disruption that proved to be the first symptoms of a global credit crisis.  As the credit crisis grew, rating agencies cut the ratings on numerous classes of securities, including asset backed commercial paper such as Mainsail and Victoria, and the value of certain of Plaintiff's investments declined.  To recoup those losses, in addition to this action, Plaintiff filed separate legal actions for its other investments against Morgan Stanley, Deutsche Bank and all three national ratings agencies (Moody's, Standard & Poor's and Fitch Ratings).

---

[1] *See* Request for Judicial Notice ("RJN"), Ex. A.  Courts routinely judicially notice offering documents for securities on the grounds that they are integral to the plaintiff's claims, even where the plaintiff does not attach them to or reference them in the complaint.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1561, 118 L.Ed.2d 208 (1992); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (as "[t]he prospectus is integral to the complaint . . . We therefore decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.").

[2]  The Mainsail PPM sent to Plaintiff expressly discloses that "**90%** of the Portfolio Principal Balance may consist of Residential B/C Mortgage Securities."  (RJN, Ex. A at p. 84 ¶ 8) (emphasis added).  The Mainsail PPM defines the term "Residential B/C Mortgage Securities" as "securities . . . that entitle the holders thereof to receive payments that depend . . . on the cash flow from ***non-prime*** residential mortgage loans . . . ."  *Id*. at p. 189 (emphasis added).

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM        - 5 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

## III. ARGUMENT

### A. Legal Standard

A court, under F.R.C.P. Rule 12(f), may order stricken from any pleading any redundant, impertinent, immaterial or scandalous matter. "[W]here the motion may have the effect of making trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." *See State of California v. United States of America*, 512 F. Supp. 36, 38 (N.D. Cal. 1981).

If an allegation is "neither responsive nor relevant to the issues involved in the action" it is deemed to be impertinent. *Wilkerson v. Butler,* 229 F.R.D. 166, 170 (E.D. Cal. 2005). An allegation will be deemed immaterial if it "has no essential or important relationship to the claim for relief…being pleaded." *See Sliger v. Prospect Mortgage*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011)(citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994). While "[c]ourts often require a 'showing of prejudice by the moving party' before the challenged material will be stricken, **[] in the Ninth Circuit such a showing is not required 'if granting the motion will make the trial less complicated or otherwise streamline the ultimate resolution of the action**.'" *S. California Hous. Rights v. Nijjar*, CV 02-9712 DSF, 2004 WL 5639772 at *2 (C.D. Cal. May 26, 2004) (citing *Fantasy, Inc.*, 984 F.2d at 1527) (emphasis added).

### B. The Market Conduct Allegations are Irrelevant to Plaintiff's Claims and Should be Stricken as Immaterial.

Plaintiff's FAC contains sprawling allegations that constitute no more than a series of inferences and conclusions about Merrill Lynch's purported role in the securities and credit markets generally and its purported prescient knowledge about the future collapse of the credit markets based on collateral repossessed from Bear Stearns having nothing to do with anything

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM         - 6 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

bought by Plaintiff (the "Market Conduct Allegations").[3]

The Market Conduct Allegations are drawn from pleadings in other lawsuits, including specifically the Consolidated Amended Class Action Complaint filed in the matter styled *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*, Case No. 07-cv-9633 (S.D.N.Y., filed July 22, 2008).  (RJN, Ex. B).  Plaintiffs in that class action complaint alleged with respect to the BSAM Funds that "Merrill seized at least $850 million worth of collateral assets and indicated that the assets would be auctioned off" and that "[t]he sale . . . at materially depressed prices, and the failure to sell other CDO assets seized by Merrill, raised yet another red flag internally within the Company . . . confirm[ing] what . . . Defendants knew all along, namely that: (i) the CDO market was increasingly illiquid and had materially declined; and (ii) many CDOs (including CDOs that Merrill underwrote) could be sold only, if at all, for prices materially below par value."  (*Id.* at ¶¶ 154-161).[4]

The FAC borrows the allegations from the Class Action Complaint at paragraphs 119 through 124, none of which has anything to do with Plaintiff's purchases here.  Even more troubling is Plaintiff's effort to tie the BSAM assets to its claims here.  Plaintiff did not ever purchase any of those assets.  Nevertheless, Plaintiff jumps to the entirely speculative assertion that because Merrill Lynch had difficulty in trying to sell the securities held by the BSAM funds, it might have known that securities held by Mainsail might not be priced accurately and may be

---

[3] Plaintiff's Market Conduct Allegations are borrowed from other lawsuits concerning other securities and are immaterial to the issues in this case about Plaintiff's purchases of Mainsail and Victoria because the assets held by the funds managed by Bear Stearns (BSAM funds) were not the same assets held by Mainsail or Victoria, and Plaintiff does not allege any claims against Merrill Lynch regarding the BSAM Funds.  *See* FAC ¶¶ 118-128, 131, 135 (lines 3-4), 147 (lines 3-7), 157 (lines 19-20), 188(n), 188(o), 197(n), 197(o), 206(l), and fn 42, 44-51.

[4] Plaintiff sought discovery from Merrill Lynch regarding its auctions of the BSAM funds' assets, but Merrill Lynch objected on the grounds that it was not relevant to the claims alleged in the complaint.  Rather than allowing the pleadings to guide the scope of discovery, Plaintiff amended its complaint to support the broader discovery that it sought outside the scope of the original complaint.  Shortly after filing its amended complaint, Plaintiff attempted to revive prior discovery requests that were outside the scope of the original complaint, and filed a motion to compel shortly thereafter that is currently pending before this Court.

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM           - 7 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

marked down in value.  (FAC ¶¶ 118-128).  As fully briefed in Merrill Lynch's opposition to Plaintiff's pending motion to compel, there is no connection between Merrill Lynch's efforts to sell the BSAM funds' collateral and Plaintiff's decision to buy Mainsail or Victoria commercial paper.  Both Plaintiff and the public were well aware (long before Plaintiff purchased Mainsail from Merrill Lynch) of the BSAM fund failures, Merrill Lynch's role and difficulties in selling the BSAM collateral and that the subprime market was troubled.  (RJN, Ex. C).  For this very same reason, the Market Conduct Allegations are irrelevant to Plaintiff's claim that Merrill Lynch breached its purported disclosure obligations under the Dealer Certification.

Courts have recognized that content from and reference to complaints and other "preliminary steps in litigation and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)." *In re Merrill Lynch & Co., Inc. Research Reports Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976) (striking allegations that referred or relied on allegations from other complaints and appendices to complaints).  *See also RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("[P]aragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed.R.Civ.P. 12(f).") (citation omitted), *aff'd* 387 Fed. Appx. 72 (2d Cir. 2010).  Because Plaintiff's Market Conduct Allegations are clearly lifted from another, earlier filed lawsuit, they should be stricken as immaterial.

Striking the Market Conduct Allegations would "make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Sliger, supra*, 789 F. Supp. 2d at 1216.  For these reasons the Market Conduct Allegations should be stricken as immaterial.

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM        - 8 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

### C. The Quid Pro Quo Allegations Should be Stricken as Immaterial Because They Were Borrowed From Another Lawsuit and are Implausible as Pled.

Plaintiff also proffers its own conspiracy theory that Merrill and Mainsail had a "quid pro quo" agreement in April 2007 (and a "game plan" between Merrill and Ceres, the administrator for Victoria) to defraud investors (the "Quid Pro Quo Allegations").[5] The Quid Pro Quo Allegations are immaterial, not to mention entirely baseless and implausible to boot, and should be stricken. The FAC alleges, in part on information and belief (FAC ¶ 89, fn 18), that "in a classic Wall Street quid pro quo deal, Mainsail agreed to buy subprime securities that Merrill Lynch was trying to offload—in effect providing a dumping ground for toxic subprime waste that Merrill Lynch was desperate to get rid of—and in exchange Merrill Lynch agreed to place Mainsail's risky debt offerings." (FAC ¶ 109).

These allegations parrot the allegations made in a different action against a different financial institution (Barclays) regarding its purported quid pro quo agreement with Mainsail. Those allegations were made in the complaint filed in *Oddo Asset Management v. Barclay's Bank PLC, et al.,* Case No. 109547/08 (New York Supreme Court Manhattan, filed July 11, 2008). In the *Oddo* complaint, the plaintiff alleged that "[i]n breach of its fiduciary duties, Solent [which served as the investment manager for Mainsail] conspired with Barclays to sell impaired warehoused securities to Mainsail in April and July 2007", and that "Barclays decided to use Mainsail . . . as a dumping ground for these toxic securities." (RJN, Ex. D at ¶¶ 138-149). The Supreme Court of the State of New York granted the defendants' motions to dismiss with prejudice in that case. (RJN, Ex. E). Plaintiff now seeks to shoehorn itself into an identical claim against Merrill Lynch and justify overbroad discovery having nothing whatsoever to do with its purchases. This Court should follow the Court in *Oddo*. At a minimum, as discussed in Section III, B, because "paragraphs in a complaint that are either based on, or rely on, complaints

---

[5] *See* FAC ¶¶ 2, 6, 7, 81, 109-110, 158, 188(i), 197(i), and fn 2, and 64.

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO. 2:10-CV-01156 RSM     - 9 -
A/74743071.11

BINGHAM MCCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA 92626
PHONE: 714.830.0600
FAX: 714.830.0700

in other actions . . . are, as a matter of law, immaterial within the meaning of Fed.R.Civ.P. 12(f)" (*RSM Production Corp, supra*, 643 F. Supp. 2d at 403), the Quid Pro Quo Allegations should be stricken.  Moreover, the allegations as pled are both baseless and implausible.[6]

There simply is no evidence of the existence of a quid pro quo agreement with Mainsail or Victoria to dump toxic assets from Merrill Lynch to Mainsail or Victoria and it would not bear on Plaintiff's purchase in any event.  Indeed, Mainsail and Victoria are not even mentioned in the alleged communication.  The statements in the communication reflect, on their face, nothing more than legitimate business and financial transactions.  Plaintiff is stretching beyond the realm of plausibility to infer a nefarious conspiracy from the cited communication.  Courts are not required to accept as true unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Plaintiff must "state a claim to relief that is plausible on its face" and must rise above the speculative level.  *Twombly,* 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads **factual content** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (emphasis added).

"An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." *Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585, 597 (8th Cir. 2009).  As Plaintiff acknowledges in its FAC, "Merrill Lynch was deeply involved in the securitization of mortgage and other assets and in the underwriting and distribution of Asset Backed Securities (ABS),

---

[6] Plaintiff cites only to a March 29, 2007 email, attached as Exhibit 8, as support for its allegations.  Yet the email does not mention Mainsail, and it is implausible to reach Plaintiff's conclusion based on the following statements: "Stuart Cutler told us that there are 20+ SIVs out there… Only 1-2 have bought from us…Most of them have capacity to buy more and [are] looking for assets…Also they are very axed to issue single A paper and have us place it for them… I think the game plan should be to talk with each of these accounts w[ith] 2 themes. . . figure out a way to place single As off their SIVs for them into our CDOs. . . . sell them or create for them CLOs/TP CDOs that they can buy…"

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM           - 10 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

especially (but by no means exclusively) Residential Mortgage Backed Securities (RMBS) and Collateralized Debt Obligation (CDOs)." (FAC ¶ 61). The statements made in the March 29 email simply reflect business communications regarding Merrill Lynch's lawful business activities.

Plaintiff's speculative inferences about "unspoken intentions" reflected in the email cannot support its assertions about a purported far reaching conspiracy to offload toxic subprime assets from Merrill Lynch to unwitting investors by hiding the fact that Mainsail assets included subprime securities. This is not only implausible under *Twombly*, it is contradicted by the actual facts. Prior to the first purchase at issue 1) Merrill Lynch sent Plaintiff the latest PPM, containing 36 pages of risk disclosures and advising that 90% of Mainsail's assets are invested in subprime securities, and 2) the day before the purchase at issue, the Merrill Lynch representative for Plaintiff advised Plaintiff of increasing market volatility and recommended joining the "Flight to Quality" by purchasing bonds issued by the Federal Home Loan Banks. For each of these reasons, the Quid Pro Quo Allegations should be stricken.

### D. The Litigation Allegations Are Neither Responsive Nor Relevant to Plaintiff's Claims and Should be Stricken as Impertinent.

Plaintiff also added allegations commenting on positions taken by Merrill Lynch in defending against this litigation (the "Litigation Allegations").[7] Such commentary, being "neither responsive nor relevant to the issues involved in the action" (*Wilkerson, supra,* 229 F.R.D. at 170), should be stricken as impertinent. For example, Plaintiff pleads in Paragraph 34 that "*Merrill has suggested during the course of this litigation* that it and King County agreed at some time prior to July 2007 to alter, amend, or abandon the Dealer Certification." (emphasis added). Plaintiff is required to plead allegations that are "simple, concise, and direct" (F.R.C.P. 8(d)(1)), and should be factual in nature. *See Twombly, supra*, 550 U.S. at 555-556, fn 3 (Rule

---

[7] *See* FAC ¶¶ 34, 43 (lines 22-23), 92 (lines 13-14), and fn 12, 37, and 55.

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM        - 11 -
A/74743071.11

BINGHAM McCUTCHEN LLP
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented.") Commentary by Plaintiff is neither responsive nor relevant to the issues involved in the action and does not constitute a factual allegation. For these reasons, the Litigation Allegations should be stricken as impertinent.

### E. The Purported Recommendation Allegations are Contradicted By Plaintiff's Prior Pleadings and The Offering Documents Sent To Plaintiff Prior To Its Purchases.

Plaintiff's FAC also includes contradictory allegations about a "recommendation" to purchase Mainsail, sent two weeks before the purchase was actually made (the "Purported Recommendation Allegations").[8] When a complaint is amended by leave of court, as is the case here, "the amended complaint may only allege 'other facts consistent with the challenged pleading.'" *Reddy v. Litton Indus., Inc.* 912 F.2d 291, 296-97 (9th Cir. 1990) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.* 806 F.2d 1393, 1401 (9th Cir. 1986)). By including the Purported Recommendation Allegations, Plaintiff suddenly purports to remember for the first time, that the CIO made the purchases of Mainsail at issue based on the "recommendation" of a Merrill Lynch financial advisor after receiving an email identifying Mainsail as one of the "CP offerings you might like." (FAC ¶¶ 10 n.5, 138). As discussed above, this allegation is contradicted by Plaintiff's prior allegations admitting that Merrill Lynch did not solicit or recommend the July 27 and July 31 purchases of Mainsail (Compl. ¶¶ 78-87, 93), and the fact that Plaintiff received the PPM fully disclosing any risks. For these reasons, the Purported Recommendation Allegations should also be stricken.

## IV. CONCLUSION

For the foregoing reasons, Merrill Lynch respectfully requests an order from the Court striking the prayed for paragraphs from the FAC.

---

[8] *See* FAC ¶¶ 98 (line 16), 138, 176, 178, 187(a), 196(a) and fn 5.

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM         - 12 -
A/74743071.11

**BINGHAM McCUTCHEN LLP**
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700

1  DATED this 23rd day of February, 2012          BINGHAM McCUTCHEN LLP

2

3                                                  s/*Todd E. Gordinier*_____
                                                  Todd E. Gordinier
4                                                  (*Admitted Pro Hac Vice*)
                                                  todd.gordinier@bingham.com
5                                                  600 Anton Boulevard, 18th Floor
                                                  Costa Mesa, CA 92626-1924
6                                                  (714) 830-0622

7                                                  BINGHAM MCCUTCHEN LLP
                                                  Donald S. Davidson
8                                                  (*Admitted Pro Hac Vice*)
                                                  donald.davidson@bingham.com
9                                                  Three Embarcadero Center
                                                  San Francisco, CA 94111-4067
10                                                 (415) 393-2360

11                                                 DAVIS WRIGHT TREMAINE LLP
                                                  William K. Rasmussen, WSBA #20029
12                                                 Charles S. Wright, WSBA #31940
                                                  John Goldmark, WSBA #40980
13                                                 1201 Third Avenue, Suite 2200
                                                  Seattle, Washington 98101-3045
14                                                 (206) 622-3150

15                                                 Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused to be electronically filed the foregoing and this Certificate of Service with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

- **James D. Baskin**
  jbaskin@scottdoug.com,mpeters@scottdoug.com
- **Randy J. Branitsky**
  rbranitsky@themis.us.com
- **Donald S Davidson**
  donald.davidson@bingham.com
- **Casey L. Dobson**
  cdobson@scottdoug.com,jsifuentes@scottdoug.com
- **Todd E Gordinier**
  todd.gordinier@bingham.com
- **William K. Rasmussen**
  BillRasmussen@dwt.com; CharlesWright@dwt.com; JohnGoldmark@dwt.com
- **S. Abraham Kuczaj , III**
  akuczaj@scottdoug.com,ewebb@scottdoug.com,jtexeira@scottdoug.com
- **John W. Gasink**
  jgasink@scottdoug.com, dwalker@scottdoug.com
- **John P. Pierce**
  jpierce@themis.us.com
- **William Randolph Squires , III**
  rsquires@corrcronin.com,mbdahl@corrcronin.com,reception@corrcronin.com
- **Bryan D. Lauer**
  blauer@scottdoug.com
- **Craig A. Taggart**
  craig.taggart@bingham.com,lan.ly@bingham.com
- **Donald S. Davidson**
  **d**onald.davidson@bingham.com
- **Edward S. Kim**
  **e**dward.kim@bingham.com

DATED this 23rd day of February, 2012

s/*Todd E. Gordinier*
**Todd E. Gordinier**

DEFENDANTS' MOTION TO STRIKE ALLEGATIONS
FROM FIRST AMENDED COMPLAINT
CIVIL ACTION NO.  2:10-CV-01156 RSM         - 14 -
A/74743071.11

**BINGHAM McCUTCHEN LLP**
600 ANTON BLVD., 18TH FLOOR
COSTA MESA, CA  92626
PHONE: 714.830.0600
FAX: 714.830.0700